1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   Kim Ordway                          )    No. CV-04-1046-PCT-MHM
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    Dr. Charles Lucero, et al.,          )
13                                       )
                Defendants.              )
14                                       )
                                         )
15  _____      )

16

17          Currently before the Court is Plaintiff Kim Ordway's ("Plaintiff") Motion for Partial

18  Summary Judgment on Liability (Dkt.#39,40) and Defendants Dr. Charles Lucero, Doris

19  Goodale, Jeri Short, Patrick Carlin, Michael Cobb, Michael Ford and Tonya Ford's

20  (collectively "Defendants") Motion for Summary Judgment. (Dkt.#41).  After reviewing the

21  pleadings and record and conducting oral argument on January 22, 2007, the Court issues the

22  following Order.

23  **I.      Evidentiary Objections**

24          The Court has reviewed the evidentiary objections issued by Defendants to Plaintiff's

25  Statement of Facts in support of her Motion for Partial Summary Judgment.  The Court

26  overrules Defendants' objections to ¶¶'s 4,6,7,14, 15, 20,21,23, 24,25,26,27,28,29,32,34-

27  38,41, and 42.  Defendants object to these statements upon grounds that the statements are

28  either not undisputed or are immaterial to matters raised in this litigation. The Court will

1 overrule Defendants' objections but notes that the statements presented are disputed or are

2 otherwise alleged to be immaterial. See S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th

3 Cir.1982) (stating that "a material issue of fact is one that affects the outcome of the litigation

4 and requires a trial to resolve the parties' differing versions of the truth.").  The Court will

5 sustain Defendants' objection to ¶¶ 30-31, on the grounds that Plaintiff's affidavit testimony

6 that other male employees had access to the same type of funds that Plaintiff was charged

7 with misusing is wholly inconsistent with Plaintiff's deposition testimony. (DSOF¶¶80-81).

8 See Block v. City of Los Angeles, 253 F.3d 410, 419 n.2 (9th Cir. 2001) (stating that "[a]

9 party cannot create a genuine issue of material fact to survive summary judgment by

10 contradicting his earlier version of the facts.").

11 **II.     Factual Background**

12          On May 21, 2004, Plaintiff filed the instant suit against the above-mentioned

13 Defendants asserting claims of sex discrimination and retaliation in violation of Title VII of

14 the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Title VII) and claims based upon

15 violations of Plaintiff's due process rights pursuant to 42 U.S.C. § 1983.  Plaintiff's claims

16 are alleged against officials of the Kingman Unified School District; specifically: (1) Dr.

17 Charles Lucero ("Defendant Lucero"), president; (2) Doris Goodale ("Defendant Goodale"),

18 vice-president; (3) Jeri Short ("Defendant Short"), member of board; (4) Michael Cobb

19 ("Defendant Cobb"), member; and (4) Michael Ford ("Defendant Ford"), superintendent.

20 Plaintiff's claims arise out of her employment with the Kingman Unified School District,

21 No.20 as the principal of Kingman High School - South Campus, from 1995 through June

22 of 2003.  Plaintiff applied for the position with Defendant Ford, the superintendent of the

23 District.  Plaintiff was employed pursuant to an employment contract for each school year

24 of her employment.  The most recent contract was effective as of July 1, 2002, and expired

25 on June 20, 2003.  Prior to the school year of 2002 through 2003, Plaintiff received positive

26 performance reviews by Defendant Ford.  However, an issue arose in early 2003 regarding

27 the purchase and use of a mobile cart referred to as a "Gator" for her personal use.

28 According to Defendants, because Plaintiff did not like the cart, she arranged for the District

1   to purchase the cart. Dr. Ford believed that Plaintiff's conduct with regard to the purchase

2   of the cart by the District was improper. Based upon this conduct, Dr. Ford requested that

3   Plaintiff resign from her position as principal. On February 11, 2003, Plaintiff submitted a

4   written letter of resignation to be effective as of June 30, 2003. The Governing Board of the

5   District accepted the letter of resignation. After Plaintiff's letter of resignation, Dr. Ford,

6   upon receipt of new information, requested the Mohave County Attorney's Office investigate

7   alleged misconduct by Plaintiff regarding the handling of a student booster account. The

8   Mohave County Attorney's Office issued its findings and prepared a written statement of

9   charges (the "Statement of Charges") against Plaintiff, which were presented to the

10  Governing Board. Dr. Ford, based upon these charges, recommended to the Board that

11  Plaintiff be dismissed. Plaintiff was informed in writing on May 14, 2003, that the

12  Governing Board would meet in executive committee the next day, May 15, 2003, to

13  consider whether to Adopt Dr. Ford's recommendation. Plaintiff was present at the meeting

14  on May 15, 2003. At the conclusion of the executive committee meeting, the Governing

15  Board held a public session at which time it voted to accept Dr. Ford's recommendation to

16  dismiss Plaintiff. The District provided Plaintiff with a written notice of dismissal effective

17  as of May 15, 2003.   Shortly after Plaintiff's dismissal, Plaintiff's counsel issued

18  correspondence to the Board challenging the termination as a violation of Plaintiff's due

19  process rights.   Through a series of correspondence, the District agreed to rescind the

20  dismissal of Plaintiff and pay Plaintiff her salary through the conclusion of her contract, or

21  June 30, 2003. The District also agreed to either withdraw the Statement of Charges that

22  formed the basis for Plaintiff's dismissal or afford Plaintiff the opportunity to contest the

23  charges. On November 12, 2003, the Governing Board withdrew the Statement of Charges

24  that formed the basis for Plaintiff's dismissal. Plaintiff was informed prior to the meeting, that

25  she might not be permitted to address the Governing Board before it made its decision.

26       On May 27, 2004, a grand jury in Mohave County, Arizona returned an indictment

27  against Plaintiff on ten felony criminal counts, including nine counts of theft, regarding

28  Plaintiff's handling of school funds as to the student booster account.   On October 20, 2004,

1
2
3
4
5

Plaintiff entered a plea of guilty as to counts six and seven, which were counts of theft, class six and three felonies respectively. On December 22, 2004, the Mohave County Superior Court entered a judgment of conviction against Plaintiff. Plaintiff was placed on probation and ordered to pay restitution of $7,500 to the District resulting from her handling of school funds.

6

**III.    Standard**

7
8
9
10
11
12
13
14
15
16
17

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).   See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 106 S.Ct. 1348 (1986). The evidence must be viewed in the light most favorable to the nonmoving party. Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

18

**IV.    Analysis**

19

**A.    Title VII**

20

**(1)    Plaintiff Did Not Name the School District as a Defendant.**

21
22
23
24
25
26
27
28

As noted above, Plaintiff's Complaint asserts claims of unlawful sexual discrimination and retaliation in violation of Title VII against the individually named Defendants. As noted by Defendants; however, a Title VII claim against these individual Defendants is misplaced. Holly D. v. California Institute of Technology, 339 F.3d 1158, 1179 (9th Cir. 2003) (noting that "Title VII does not provide a cause of action for damages against supervisors or fellow employees"); see also Pink v. Modoc Indian Health Project, 157 F.3d 1185, 1189 (9th Cir. 1998). In response to Defendants' position on this point, Plaintiff states that "[w]hile it is true that these claims against the individuals cannot proceed under Title VII, the Defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

District through its Board is not subject to dismissal." (Plaintiff's Response, Dkt.#51, p.2). Thus, Plaintiff contends that her claims for sexual discrimination and retaliation asserted in counts one and two against her employer, the Kingman Unified School District, cannot be dismissed.  However, the flaw with Plaintiff's position is that the District is not even named in Plaintiff's complaint.  Instead Plaintiff names only individuals employed with the District. Plaintiff cites no authority suggesting that naming employees or members in a Title VII claim is sufficient to also assert such claims against the employer District.  Rather, Plaintiff cites the Arizona Supreme Court's decision in Amphitheater Unified School Dist. No. 10 v. Harte, 128 Ariz. 233, 235, 624 P.2d 1281 (Ariz. 1981), which held that a school district can be subject to an employment discrimination suit and the Ninth Circuit's decision in Savage v. Glendale Union High School, Dist. No.205, Maricopa County, 343 F.3d 1036, 1051 (9th Cir. 2003), which addressed a question of sovereign immunity with regards to a school district as opposed to the state.  Neither of these cases provide any authority suggesting that a plaintiff's failure to expressly bring suit against an employer or school district is forgiven should the plaintiff name individual members of that district.  In light of this finding, the Court finds Plaintiff's failure to name the District significant and bars Plaintiff's attempt to assert Title VII claims against the District.  However, the Court will not end its inquiry regarding the merits of Plaintiff's Title VII claims on this basis alone and will evaluate the propriety of an amendment to include the District at this late stage of the litigation.  In re Circuit Breaker Litigation, 175 F.R.D. 547, 551 (9th Cir. 1997) ("[l]eave to amend may be denied if the proposed amendment is futile or would be the subject of dismissal.").

22
23
24
25
26
27
28

**(2)    Timeliness of Title VII Sex Discrimination and Retaliation Claims**

As noted by Defendants, Plaintiff has filed two separate charges with the Equal Employment Opportunity Commission regarding the alleged sexual discrimination and retaliation while employed with the District.   On May 19, 2003, Plaintiff filed her first charge with the EEOC.  (DSOF ¶ 61).  The charge was dismissed by the EEOC on June 30, 2003.  (DSOF ¶ 62).  Plaintiff's Complaint was then filed on May 21, 2004 before this Court. (Dkt.#1).   These time considerations as to Plaintiff's first charge of sex discrimination

1
2
3
4
5
6
7
8
9
10

demonstrate that the claim and allegations supporting Plaintiff's claim are time barred. Specifically, 42 U.S.C. § 2000e-5(f)(1) provide that a claimant must file suit no later than 90 days after the EEOC's dismissal of the claimant's charge of discrimination.  Here, the Complaint was not filed until some 326 days after the EEOC dismissed Plaintiff's charge. In addition, Plaintiff offers no argument to toll the 90-day requirement.  As such, it is apparent that Plaintiff's claim of sex discrimination and allegations supporting Plaintiff's sexual discrimination claim with the EEOC are time barred. See Mitchell v. Los Angeles Community College School District, 861 F.2d 198, 202 (9th Cir. 1988) (holding plaintiff's Title VII suit to be time barred where suit was brought more than 90 days after receiving the right to sue letter).

11
12
13
14
15
16
17
18
19
20
21
22

In light of the determination that Plaintiff's sex discrimination claim based upon her first EEOC charge is time barred, the Court must address the viability of Plaintiff's Title VII claims based upon the filing of her second EEOC charge on January 16, 2004.  In reviewing the timing of Plaintiff's second EEOC charge, Plaintiff received her right to sue letter on February 27, 2004 and timely asserted her Complaint before this Court on May 21, 2004. (DSOF ¶¶63,64).  As such, on its face, Plaintiff's second EEOC charge is timely.  However, in reviewing the allegations of the second EEOC charge it is apparent that only part of the allegations and claims can be considered timely.  This determination is based upon the fact that Plaintiff simply restated her allegations in support of her sexual discrimination claim from her first EEOC charge with the second EEOC charge.  (DSOF ¶¶61,63).  Specifically, in both of Plaintiff's first and second EEOC charges she asserted the following allegations in support of her sex discrimination claim:

23
24
25
26

During the last 5 years I have been subjected to harassment and intimidation by Michael Ford, Superintendent.  On approximately February 11, 2003 I submitted my letter of resignation under duress.  It was accepted on March 11, 2003.  On May 15, 2003 Michael Ford brought charges of unprofessional conduct to the Board to have me dismissed.  I was dismissed on May 15, 2003 and Michael Ford was given permission to submit information to the Department of Education to have my certification pulled.

(DSOF ¶¶ 61,63).

27
28

As noted by Defendants, it would defeat the purpose of the timeliness requirement for

1   Title VII claims to allow previous untimely charges with the EEOC to simply be refiled and

2   timely filed in federal court to be recognized. See Lo v. Pan American World Airways, Inc.,

3   787 F.2d 827, 828 (2d Cir. 1986) (finding plaintiff's Title VII claim to be untimely where

4   the facts alleged in the second EEOC charge were the same as the first EEOC charge and

5   plaintiff previously failed to file action based upon right to sue letter from first EEOC

6   charge). As such, the Court finds that because Plaintiff has simply re-alleged the facts

7   supporting her first EEOC charge in support of her claim of sex discrimination that the claim

8   and supporting allegations are time barred.

9       The Court does not find; however, Plaintiff's allegations in her second timely EEOC

10  charge supporting her claim of retaliation to be time barred as those allegations were not

11  previously asserted and are sufficiently distinct from the allegations of sex discrimination

12  asserted in the first EEOC charge. Specifically, Plaintiff's second EEOC charge asserts in

13  pertinent part:

14          Subsequent to my dismissal, I have been retaliated against. In May 2003, I
            was not allowed to speak at the Board Meeting where the decision was made
15          to not renew my contract. I requested another meeting with the Board which
            was finally granted on November 12, 2003. At the meeting, I was informed
16          that the Statement of Charges to school district had filed against me in May
            2003 had been dropped. Again, I was not allowed to speak at this meeting.
17          As a result, I have lost seven school positions and countless other opportunities
            in Kingman due to bad references given out by the Board.
18  (DSOF ¶ 63).

19      In light of the fact that the allegations supporting Plaintiff's retaliation claim asserted

20  in her second EEOC charge were not previously asserted and are sufficiently distinct from

21  the allegations of her first EEOC charge, the second EEOC charge and resulting retaliation

22  claim is timely. See Goodluck v. Kelly Tractor Co., 733 F. Supp. 1479 (S.D. Fla. 1990)

23  (holding certain Title VII claims based upon second timely EEOC charge which were

24  sufficiently distinct from previous untimely EEOC charge to be timely).

25                    **(3)    Merits of Title VII Retaliation Claim**

26      To establish a prima facie case of discriminatory retaliation under Title VII, a plaintiff

27  must show that "(1) she engaged in activity protected under Title VII, (2) her employer

28  subjected her to adverse employment action, and (3) her employer's action is causally linked

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to the protected activity." <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1375 (9th Cir.1987).   If the plaintiff establishes a prima facie  case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse-employment action. <u>Manatt v.. Bank of Am.</u>, 339 F.3d 792, 800 (9th Cir.2003).   If the defendant meets its burden, to avoid summary judgment, the plaintiff then must show "specific and substantial evidence" of pretext. <u>Schuler v. Chronicle Broadcasting Co.</u> 793 F.2d 1010, 1011 (9th Cir. 1986).   Upon reviewing the record, the Court finds that there is insufficient evidence before the Court to support a retaliation claim under Title VII.   Plaintiff argues that the retaliation by Defendants can be found based upon the denial of her right to a hearing once her employment was terminated by the District based upon the Statement of Charges regarding her conduct with respect to the student booster account.   However, even assuming these allegations support a prima facie case that Plaintiff engaged in protected activity by opposing her termination and requesting a hearing, it appears clear that there is a legitimate non-retaliatory basis for the District's action to take adverse employment action against Plaintiff.   That is, her misappropriation of the student funds producing the Statement of Charges and her termination.   Notably, Plaintiff was ultimately convicted for her conduct relating to the student funds which produced the Statement of Charges. The fact that Plaintiff was convicted estops her from denying the activity supporting the Statement of Charges.   This fact clearly provides the District with a valid non-retaliatory basis for taking the initial action of dismissing Plaintiff from her employment without a hearing.   In response to this valid non-retaliatory basis, Plaintiff fails to set forth "specific and substantial evidence" that Plaintiff's misconduct with respect to the student booster account was a pretext for taking such action.   Plaintiff argues at length that the denial of her right to a hearing to address the Statement of Charges exemplifies the retaliatory motive of the District.   However, the Court struggles to see how this argument provides "specific and substantial" evidence that the District used the Statement of Charges as a pretext.   As such, the Court finds that Plaintiff's proposed retaliation claim against the District fails as a matter of law as Plaintiff's misconduct with respect to school funds and

1
2

Plaintiff's termination on this basis provides a legitimate non-retaliatory basis for the actions taken against Plaintiff, which Plaintiff cannot rebut.

3
4
5

As such, because Plaintiff's proposed Title VII claims against the District are futile, the Court finds that there is no reason at this late stage of the litigation to permit Plaintiff to amend to assert such claims.

6

**B.    Plaintiff's § 1983 Claims Based Upon Sex Discrimination Against Individual Defendants**

7
8
9
10
11
12
13
14
15
16
17
18
19

As a result of Plaintiff's failure to allege any claim against the Kingman School District, Plaintiff alternatively asserts that her claims of sex discrimination survive in the context of § 1983 claims against the individually named Defendants, even though Plaintiff did not allege any such cause of action in her Complaint.  (Plaintiff's Response, Dkt.#51, pp.2-3).   Plaintiff asserts that her "claims for sex discrimination (as an equal protection guarantee founding Counts 1 and 2 of her complaint) survive against the individuals she has named..." (Id. p.2).   Plaintiff asserts that the liberal pleading rules and liberal standard regarding amendment support this determination.  Again, the Court finds Plaintiff's request to allow the assertion of new claims at this stage of this litigation barred, especially considering the possible prejudice to Defendants to allow such new claims.  However, again, the Court will evaluate whether such an amendment in support a claim of sex discrimination against the individually named Defendants would be futile. Circuit Breaker 175 F.R.D. at 551.

20
21
22
23
24
25
26
27
28

Section 1983 recognizes a cause of action against "a person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory," deprives another of any constitutionally protected rights. The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158 (1992). As noted by Plaintiff, Title VII and claims based upon § 1983 are not mutually exclusive. Roberts v. College of the Desert, 870 F.2d 1411, 1415 (9th Cir. 1988) ("Title VII does not preempt an action under section 1983 for a violation of the fourteenth amendment."). Section

1

2

3

4

5

6

7

8

1983 incorporates the equal protection standards that have developed in fourteenth amendment jurisprudence. See Chavez v. Tempe Union High School District, 565 F.2d 1087, 1095 (9th Cir. 1977).  Plaintiff offers no specific argument in support of a sex discrimination pursuant to § 1983 against the named Defendants in her pleadings, but presumably relies on the same allegations supporting Plaintiff's Title VII claims of sex discrimination and retaliation.  Id. (stating that in order to prevail on § 1983 claim alleging sex discrimination plaintiff must prove that the defendant purposefully discriminated against her because of her sex).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

        Based upon a review of the record, the Court finds that there is insufficient evidence as a matter of law to support a prima facie case of sex discrimination.  The record reveals that on February 11, 2003, Plaintiff submitted her letter of resignation amongst allegations of misconduct regarding the purchase of a mobile cart. After her resignation, the Mohave County Attorney's Office produced the Statement of Charges which detailed misconduct with respect to the use of school funds as to student booster account.  The District, based upon  the recommendation of Defendant Ford, approved Plaintiff's termination, effectively immediately.  As addressed below, Plaintiff asserts that such dismissal without opportunity for hearing was in direct violation of her due process rights as well.  However, based upon the record before the Court, Plaintiff fails to set forth any credible evidence suggesting sex discrimination produced her termination.  In fact, the closest Plaintiff gets to alleging any type of discrimination in her papers is that "similarly situated persons with control of similar funds had used [the funds] in much the same way as [Plaintiff] had used them."  (Plaintiff's Response, Dkt.#51, p.11. ll 4-5).  This assertion obviously falls far short of suggesting that Plaintiff was discriminated against based upon her sex.  Notably, Plaintiff's assertion does not even differentiate between similarly situated males and females.  In fact, the record reveals no indication that the Defendants handled any type of similar situation involving the misuse of public funds differently, whether it be male or female employees.  (DSOF ¶¶78-86).  In light of the fact that there is no evidence of sex discrimination by the Defendants,

28

1
2

Plaintiff proposed § 1983 claims based upon sex discrimination are without merit, thus precluding Plaintiff's request to amend to assert such claims at this late stage.

3

### (C)    Section § 1983 Due Process Claims

4
5
6
7
8
9
10
11
12
13
14
15

Plaintiff also asserts several claims based upon a denial of her due process rights under the umbrella of § 1983. (Counts III through VI).  These claims are premised upon the Defendants' conduct in denying Plaintiff a hearing with regard to her termination on May 15, 2003, based upon the Board's adoption of the Statement of Charges.   Plaintiff asserts these claims based upon violations of both her property and liberty interests.  A plaintiff claiming to have been discharged or suspended without notice or a hearing must first establish that she has been deprived of a property or liberty interest that is protected by the due process clause of the fourteenth amendment. Bd. of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705 (1972). Once a plaintiff has demonstrated a constitutionally protected property or liberty interest, the court may inquire into the sufficiency of the process afforded. Royster v. Bd. of Trustees of Anderson Co. School Dist. No. 5, 774 F.2d 618, 620 (4th Cir.), *cert. denied*, 475 U.S. 1121 (1985).

16

### (1)    Property Interest Claims

17
18
19
20
21
22
23
24
25
26

Counts III and V of Plaintiff's Complaint assert violations of her due process rights based upon violations of her property interest in her employment with the District. In response to these claims, Defendants argue that such claims fail as a matter of law due to the fact that it is undisputed that upon rescinding the Statement of Charges against Plaintiff in November of 2003, the Board also directed that Plaintiff receive full payment of her remaining salary through the expiration of her employment contract or June 30, 2003. (DSOF ¶¶ 51,58). Thus, according to Defendants, the fact that Plaintiff received full compensation through the contracted expiration date of June 30, 2003 moots any due process claim based upon a violation of Plaintiff's property rights. The Court finds this argument persuasive.

27
28

A review of relevant persuasive authority demonstrates that in instances where a person claiming a property interest in employment is paid in full the amount due and owing

1  under the existing employment contract, the person's property interest in that employment

2  is extinguished. Royster 774 F.2d at 621 (holding that "any constitutionally protected

3  property interest claimant had as a result of his employment contract has been satisfied by

4  payment of the full compensation due under the contract."); see also Fields v. Durham, 909

5  F.2d 94, 98 (4th Cir.1990), *cert. denied*, 498 U.S. 1068 (1991); Huang v. Bd. of Governors

6  of the Univ. of North Carolina, 902 F.2d 1134, 1141-42 (4th Cir.1990); Schneeweis v.

7  Jacobs, 771 F.Supp. 733,736-37 (E.D.Va. 1991) (holding that coach suspended during term

8  of contract but fully compensated was not deprived of property interest).  In the instant case,

9  Plaintiff received full compensation due and owing to her through the expiration of her

10  contract, albeit, after her contract had expired.  However, the fact that she was paid in full

11  eliminates any due process claim based upon a constitutionally property interest.

12      In addition, to the property interest in her employment contract salary, Plaintiff also

13  appears to allege a property interest in the unpaid sick leave Plaintiff accrued through her

14  years of employment with the Kingman School District.  However, the written policy of the

15  District is clear that in order to receive payment for such leave upon separation, the employee

16  must have ten years of continuous service with the District. (DSOF ¶54).  Here, Plaintiff only

17  had eight years of continuous service, thus did not qualify for such payment.  Thus, under

18  the circumstances, because Plaintiff received payment in full of her salary pursuant to the

19  2002 - 2003 contract she had signed, the Court finds that Plaintiff's due process claims

20  asserting a violation of her property rights based upon employment fail as a matter of law.

21   Plaintiff was paid the full benefit of her contract due and owing and did not possess any

22  further property interest in employment beyond the 2002-2003 term.

23          **(2)    Liberty Interest Claims**

24      Plaintiff asserts that her liberty interest with respect to her employment and ultimate

25  termination was implicated by the Defendants' conduct.  Defendants on the other hand

26  dispute any such violation and argue that Plaintiff's liberty interest was not violated as a

27  matter of law.

28

1   Due process demands that one be given "an opportunity to be heard 'at a meaningful

2   time and in a meaningful manner.'" Vanelli v. Reynolds School District No. 7, 667 F.2d 773,

3   779-80 (9th Cir. 1982).   With respect to the termination of a public employee, a liberty

4   interest is implicated only "if a charge impairs [one's] reputation for honesty or morality. The

5   procedural protections of due process apply if the accuracy of the charge is contested, there

6   is some public disclosure of the charge, and it is made in connection with the termination of

7   employment or the alteration of some right or status recognized by state law."  Id. at 777-78.

8   In the instant case, there can be little doubt that the charge leading to Plaintiff's

9   termination with the District bears on Plaintiff's reputation for honesty or morality.

10   Specifically, the Statement of Charges asserted that Plaintiff had misappropriated school

11   funds while acting as principal.  Moreover, because of the denial of any hearing, it appears

12   that Plaintiff was denied her opportunity to challenge the accuracy of the Statement of

13   Charges which was made in connection with Plaintiff's termination.  However, that being

14   said, the fact that an employee is terminated without a hearing does not in and of itself

15   provide a sufficient basis for a denial of due process consistent with the employee's liberty

16   interest. Most notably for purposes of this case is that in addition to challenging the accuracy

17   of the charge producing the dismissal, a § 1983 plaintiff must also demonstrate that there is

18   some public disclosure by the defendants of the charge producing the dismissal.

19   Plaintiff contends that the Statement of Charges leading to her dismissal was publicly

20   disclosed. In support of this position, Plaintiff asserts that there "was public disclosure of the

21   substance of the Statement of Charges..."  (Plaintiff's Motion, Dkt.#39, p.12).  In addition,

22   Plaintiff states that "[t]he substance of the Statement of Charges were widely known and in

23   the media within a day or two of the Governing Board adopting them." (Id., p.4).   As

24   authority for this statement, Plaintiff cites Plaintiff's declarations, the Statement of Charges

25   itself and the draft minutes from the Board hearing dismissing Plaintiff on May 15, 2003.

26   (PSOF ¶ 14; Plaintiff's Response, SOF ¶26, Exhibit 18).  Defendants, on the other hand,

27   contend that the Statement of Charges was not publicly disclosed by Defendants. Defendants

28   contend that the Statement of Charges was read only in private executive session and never

1   read in public.  Moreover, according to Defendants, when the Board did reconvene into

2   public session, the Board voted only to accept the recommendation from Dr. Ford to dismiss

3   Plaintiff and did not go into the Statement of Charges.  As support for this position,

4   Defendants cite the deposition testimony of Defendant Ford stating that the Statement of

5   Charges was not read during the public session of the Board Meeting. (DSOF ¶ 45).  In

6   addition, Defendants rely on Defendant Ford's deposition testimony that the District Board

7   did not make any public statements regarding their decision to terminate Plaintiff's

8   employment. (DSOF ¶ 47).

9           After reviewing the record on this issue, the Court finds that there is no credible

10  evidence suggesting that there was public disclosure of the Statement of Charges against

11  Plaintiff by the Defendants. See Bishop v. Wood, 426 U.S. 341, 348 (1976) (holding that

12  where asserted reasons for decision to discharge policeman were communicated in private

13  and were not made public, it cannot form the basis for due process claim).   This

14  determination is bolstered by the fact that in opposition to Defendants' reliance on Defendant

15  Ford's sworn deposition testimony, Plaintiff asserts only that "Dr. Ford did read the statement

16  of charges against her aloud in the public session of the meeting of the school board and that

17  discussion was held in public session." (Plaintiff's Response to DSOF, Dkt.#52, ¶¶45,47).

18  Notably, Plaintiff cites no portion of the record to support this position.  Rather, Plaintiff

19  asserts that the Statement of Charges was read in public session but only speculates that "the

20  District or Dr. Ford (or their agents) are most assuredly the entities who disclosed the

21  substance of the Statement of Charges." (Plaintiff's Motion, p.4, n.2).  However, such

22  conclusory and speculative statements not supported by the record are not sufficient to create

23  a factual issue as to whether the Statement of Charges was publicly disclosed by the

24  Defendants. See Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)

25  (stating conclusory testimony in moving papers is insufficient to raise genuine issues of fact

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12

and defeat summary judgment).[1] Moreover, Plaintiff's declarations and the draft minutes from the May 15, 2003, hearing provide no indication of public disclosure of the Statement of Charges by the Defendants. (PSOF ¶14; PRSOF ¶26). At best, Plaintiff's May 4, 2006, declaration provides only speculation that Defendant Ford or the other Defendants publicly disclosed the Statement of Charges to others such as prospective employers based upon public awareness of Plaintiff's employment situation with the District. (PRSOF ¶26). General public awareness does not demonstrate that any of the Defendants made affirmative public disclosures.[2] See Rich v. Secretary of the Army, 735 F.2d 1220 (10th Cir. 1984) ("[t]o impinge on a liberty interest, the stigmatizing information must be made public by the offending governmental agency."). Therefore, because Plaintiff cannot demonstrate the publication of the Statement of Charges by Defendants, Plaintiff's due process claims based upon her liberty interest fail as a matter of law; Counts IV and VI.[3]

13
**V.    Summary**

14
15
16

The Court finds that Plaintiff's claims against the individually named Defendants fail as a matter of law. Plaintiff's Title VII claims against these named Defendants are not recognized under the law. Moreover, any amendment to permit the Title VII claims to be

17

18
19
20
21
22

[1]At oral argument, Plaintiff raised the possibility of the Statement of Charges becoming public record when placed with Plaintiff's personnel file. However, again, Plaintiff provides no evidence suggesting that the Statement of Charges was part of Plaintiff's file or that it was subject to a public record request. As such, this case does not fall within the scope of the Ninth Circuit's ruling in Cox v. Roskelley, 359 F.3d 1105, 1112 (9th Cir. 2004) which held that placement of stigmatizing information in the employee's personnel file in the face of a state statute requiring release upon request was sufficient to constitute publication to trigger the employee's liberty interest.

23
24
25
26

[2]In addition, several of Ms. Ordway's sworn statements do not appear to be based upon her personal knowledge. For instance, in ¶ 21 of her May 4, 2006, declaration she provides that a reporter "reportedly" heard the reading of the Statement of Charges during the private executive session. (PRSOF, Exhibit 18, ¶21). Clearly, this statement is not based upon Plaintiff's own personal knowledge, but amounts only to her speculation. See Fed.R.Civ.P. 56(e).

27
28

[3]Because of this determination, the Court will not entertain Defendants' other argument of qualified immunity in opposition to Plaintiff's due process claims.

1  asserted against the Kingman School District would be futile as Plaintiff's sex discrimination

2  claim is time barred and Plaintiff fails to offer "specific and substantial evidence" suggesting

3  pretext in support of  Plaintiff's retaliation claim.  In addition, the Court finds that any

4  amendment to assert Plaintiff's equal protection claims pursuant to § 1983 against the

5  Defendants based upon sex is also futile as there is simply no credible evidence of sex

6  discrimination.  Finally, the Court finds that Plaintiff's due process claims grounded in §

7  1983 also fail as a matter of law as Plaintiff has failed to demonstrate any recognizable

8  property interest or liberty interest in such claims.

9  **Accordingly,**

10  **IT IS HEREBY ORDERED** denying Plaintiff's Motion for Partial Summary

11  Judgment On Liability. (Dkt.#39).

12  **IT IS FURTHER ORDERED** granting Defendants' Motion for Summary Judgment.

13  (Dkt.#41).  Plaintiff's claims are hereby dismissed with prejudice.

14  **IT IS FURTHER ORDERED** granting Plaintiff's Motion to Strike. (Dkt.#43).

15  Exhibits 1 through 13 attached to Plaintiff's Motion for Partial Summary Judgment (Dkt.#39)

16  are to be stricken from the record.

17  **IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

18  DATED this 21st day of March, 2007.

19

20

21

22  Mary H. Murguia
United States District Judge

23

24

25

26

27

28